

# KEN PAXTON
## ATTORNEY GENERAL OF TEXAS

August 13, 2018

The Honorable Doyle "Dee" Hobbs
Williamson County Attorney
405 M.L.K. Street #7
Georgetown, Texas 78626

Opinion No. KP-0210

Re: Whether the contractual assessments imposed by local governments under the Property Assessed Clean Energy Act in chapter 399 of the Local Government Code are "special assessments by the local government and treated in a similar manner as the real estate taxes on the property" (RQ-0211-KP)

Dear Mr. Hobbs:

You ask whether the contractual assessments imposed by local governments under the Property Assessed Clean Energy Act ("Act") in chapter 399 of the Local Government Code are "special assessments by the local government and treated in a similar manner as the real estate taxes on the property."[1]

The Act governs the creation of local water and energy improvement programs in designated regions. *See generally* TEX. LOC. GOV'T CODE §§ 399.001–.019. It authorizes cities and counties to establish a program to finance permanent improvements on privately owned commercial or industrial real property with five or more dwelling units to decrease water or energy consumption or demand.[2] *See id.* §§ 399.002(3) (defining "qualified improvement"), 399.002(5) (defining "real property"), 399.006 (providing for the establishment of a program). Financing for a qualified project can be provided by a third party or the local government and is repaid through an assessment the local government imposes through a written contract with the owner of the property. *See id.* §§ 399.004(a), .005, .006(b); *see also id.* § 399.010(2) (requiring the written consent of the mortgage lien holder). You tell us that a Texas nonprofit organization—Keeping PACE in Texas—provides "a model toolkit . . . to facilitate an orderly, consistent, state-wide approach" to a program's design and implementation. *See* Request Letter at 2. You also tell us Williamson County has established a program based on this model. *See id.* at 3.

---

[1]Letter from Honorable Doyle "Dee" Hobbs, Williamson Cty. Att'y, to Honorable Ken Paxton, Tex. Att'y Gen. at 1 (Feb. 12, 2018), https://texasattorneygeneral.gov/opinion/requests-for-opinion-rqs ("Request Letter"); *see also* U.S. Dep't of Hous. & Urban Dev. Notice H 2017-01 (Jan. 11, 2017) (attached to request letter and on file with the Op. Comm.) ("Exhibit A").

[2]Examples of clean energy improvements are energy efficient boilers, upgraded insulation, new windows, and solar installations. Exhibit A at 2.

You include with your letter a 2017 Notice issued by the United States Department of Housing and Urban Development ("Department"). *See id.* at 1; *see also* Exhibit A. You tell us the Department consents to the participation in a project by the multifamily residential properties it assists and "on which it holds or guaranteed the mortgage." *See* Request Letter at 1. You explain that one of the requirements for the Department's consent, as set out in the Notice, is an opinion of the State's attorney general determining that the assessment is a special assessment and is treated in a similar manner as real estate taxes. *See id.* at 3; *see also* Exhibit A at 3. In connection with Williamson County's program, you seek that opinion.[3]

We first consider whether the assessment imposed by the local government is a special assessment. The Texas Supreme Court tells us what constitutes a special assessment in Texas. *See City of Wichita Falls v. Williams*, 26 S.W.2d 910, 912 (Tex. 1930). In distinguishing a special assessment from general taxes, which are imposed on all taxable property of a taxing unit for the general support of the taxing unit, the court said special assessments

> are charges imposed for purposes which do not necessarily require that they be imposed annually, or with reference to the time; nor are they usually based upon a percentage of the value of the taxable property of a [taxing unit], but upon the real or supposed benefit resulting from the improvement of the property on which the specific charge is laid.

*Id.*; *see also* Tex. Att'y Gen. Op. No. DM-374 (1996) at 4 (recognizing that "[a] special assessment . . . is imposed [on] property that will benefit from a proposed improvement, levied [on] an individual property owner in proportion to the benefit . . . expected to derive from the improvement, and designed to cover the costs of the improvement"). Under the Act, the city or county imposes the assessment on a particular property through a contract with the property owner. *See* TEX. LOC. GOV'T CODE § 399.005. It does not impose the assessment on all property within the designated region as a general revenue source. *See generally id.* § 399.006(b) (authorizing assessment contract with owner of real property). Rather, the assessment is intended to cover the cost of the improvement and is tied to the useful life of the improvement. *See generally id.* §§ 399.004(a), .009(a)(8). Moreover, the benefit accrues to only the property subject to the assessment and not to the general public of the municipality or county offering the funding mechanism under the Act. With these characteristics, the assessment imposed by a local government as authorized by the Act falls squarely within the description of a special assessment.

Though a special assessment is not an ad valorem tax, we next consider whether the assessment is nonetheless treated in a similar manner as the real property taxes. *See* Request Letter at 1. The Department's Notice states that "[b]ecause the payment is tied to the property tax bill, a secure payment stream, [program] financing is seen as less risky . . . than typical loans for energy efficient upgrades." Exhibit A at 2. This concern is addressed in Local Government Code section 399.014. *See* TEX. LOC. GOV'T CODE § 399.014. Subsection 399.014(a) states that an assessment imposed under the authority of chapter 399 "has the same priority status as a lien for any other

---

[3]We address your specific question and do not opine on whether the Williamson County program, the model toolkit, or the Act satisfies all of the Department's requirements.

ad valorem tax." *Id.* § 399.014(a); *see State v. Wynne*, 133 S.W.2d 951, 957 (Tex. 1939) ("An ad valorem tax is levied against property on its value."); *see generally* Tex. Tax Code §§ 32.01(a) (providing for attachment of tax lien to property), 32.05 (providing for priority of tax liens). Similarly, subsection 399.014(c) expressly provides that "[t]he assessment lien . . . may be enforced . . . in the same manner that a property tax lien . . . may be enforced . . . to the extent the enforcement is consistent with Section 50, Article XVI, Texas Constitution."[4] Tex. Loc. Gov't Code § 399.014(c). Subsection 399.014(d) states that "[d]elinquent installments of the assessments incur interest and penalties in the same manner as delinquent property taxes." *Id.* § 399.014(d); *see generally* Tex. Tax Code §§ 33.01–.11 (governing delinquent taxes). Lastly, subsection 399.014(e) provides that "[a] local government may recover costs and expenses . . . in a suit to collect a delinquent installment of an assessment in the same manner as in a suit to collect a delinquent property tax." Tex. Loc. Gov't Code § 399.014(e); *see generally* Tex. Tax Code §§ 33.41–.58 (governing a taxing unit's suit for recovery of delinquent taxes, including costs and expenses). The plain language of these provisions shows the Legislature intended to treat the assessment, at least with respect to lien priority status, enforcement, and delinquencies including the recovery of costs and expenses, in a manner similar to real property taxes. *See Combs v. Roark Amusement & Vending, L.P.*, 422 S.W.3d 632, 635 (Tex. 2013) (recognizing that the text is the best indication of the Legislature's intent).

Accordingly, a court would likely find that a contractual assessment imposed under a program authorized by chapter 399 of the Local Government Code is a special assessment by the local government and, with respect to lien priority status, enforcement, and delinquencies including the recovery of costs and expenses, is treated in a manner similar to real property taxes on the property.

---

[4]Section 50, article XVI, of the Texas Constitution protects a homestead from forced sale for purposes of paying debts or judgments, except for certain enumerated debts. *See* Tex. Const. art. XVI, § 50. As a special assessment is not a tax, it would not be excepted from homestead protection as an ad valorem tax under article XVI, subsection 50(a)(2). *See City of Wichita Falls*, 26 S.W.2d at 915.

## S U M M A R Y

A court would likely find that a contractual assessment imposed under a program authorized by chapter 399 of the Local Government Code is a special assessment by the local government and, with respect to lien priority status, enforcement, and delinquencies including the recovery of costs and expenses, is treated in a manner similar to the real property taxes on the property.

Very truly yours,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

VIRGINIA K. HOELSCHER
Chair, Opinion Committee

CHARLOTTE M. HARPER
Assistant Attorney General, Opinion Committee