**496**

BEXAR COUNTY, TEXAS et
al., Appellants,

v.

CONNELL LEASING COMPANY et
al., Appellees.

No. 16461.

Court of Civil Appeals of Texas,
San Antonio.

Jan. 28, 1981.

Michael P. Hodge, Asst. Criminal Dist. Atty., Richard W. Harris, Dumas, Huguenin, Bootman & Morrow, San Antonio, for appellants.

Edward Kliewer, III, Foster, Lewis, Langley, Gardner & Banack, Oppenheimer, Rosenberg, Kelleher & Wheatley, Lawrence H. Rubenstein, Lang, Cross, Ladon, Boldrick & Green, San Antonio, R. Steve Bickerstaff, Bickerstaff & Heath, Austin, for appellees.

## OPINION

KLINGEMAN, Justice.

This suit was brought by a group of taxpayers of Bexar County, Texas, against Bexar County, the County Judge and Commissioners, and the Tax Assessor-Collector, seeking injunctive relief prohibiting Bexar County from implementing its tax plan for the tax year 1979. The trial court, after a hearing, granted a temporary injunction on behalf of the taxpayers here involved enjoining the County from implementing its tax plan. This appeal is from the interlocutory order of the trial court granting the temporary injunction.[1] The appellees consist of both plaintiffs and intervenors, but for the purposes of this opinion will be referred to as plaintiffs or appellees. The defendants in the trial court, Bexar County et al., are the appellants here and will generally be referred to as appellants.

By three points of error appellants complain that the trial court erred (1) in holding that the plan of taxation adopted by appellants is illegal; (2) in holding that it was illegal for the Commissioners' Court of Bexar County to adopt an assessment ratio of 26% of assessed value of taxable property without giving individual notice to property owners; and (3) in granting a temporary injunction prohibiting Bexar County from implementing its tax plan.

The facts involved herein are undisputed. Since 1975, the assessment ratio used in Bexar County has been 20%. In March of 1979, the Tax Assessor-Collector sent tax notices to every taxpayer in Bexar County. The notices listed the 100% market value of the land and improvements for the previous tax year and for 1979. Also listed is the tax imposed for the previous year and for 1979, assuming no changes in tax rates or ratios. On August 13, 1979, the County Commissioners, sitting as a Board of Equalization, certified the tax rolls submitted by the Tax Assessor-Collector. It is undisputed that as of that date no action had been taken with regard to the assessment ratio. On September 4, 1979, the County Commissioners convened in special session and passed an order setting the assessment ratio for 1979 at 26% of the fair market value. The Commissioners were not sitting as a Board of Equalization at that time, but in

1. The trial court in its order granting a temporary injunction found and held that plaintiffs were entitled to a temporary injunction because: the assessment ratio was 20% until changed by the Commissioners' Court on September 4, 1979; until the action of the Commissioners' Court on September 4, 1979, the assessed value of property was determined on the basis of 20% of its market value; but for the action of the Commissioners' Court on September 4, 1979, tax statements would have been sent and property taxed on the basis of an assessed value of 20% of market value; defendants in failing to individually notify plaintiffs of an increase in the assessment prior to adjournment of the Board of Equalization have adopted an illegal, invalid and void plan of taxation; plaintiffs have never received individual written notice that the assessed valuation of their properties would be increased approximately 30%; defendants were without jurisdiction to increase the assessed valuation of plaintiffs' properties; and defendants' actions have denied plaintiffs due process.

an administrative and governmental capacity.

It is also undisputed that no individual notices of the increase in assessment ratios and assessed values were sent to the taxpayers here involved. The Tax Assessor-Collector testified that, but for the action of the Commissioners' Court on September 4, 1979, he would have employed an assessment ratio of 20% in the calculations of taxes. The Assessor-Collector and the County Judge testified that unless restrained they would use an assessment ratio of 26% in the calculations of appellees' taxes.

Article 7206, Tex.Rev.Civ.Stat.Ann. Boards of Equalizations, states:

5. Whenever said board shall find it their duty to raise the *assessment* of any person's property, they shall order the county clerk to give the person who rendered the same written notice that they desire to raise the value of same. They shall cause the county clerk to give ten days written notice before their meeting by publication in some newspaper, but, if none is published in the county, then by posting a written or printed notice in each justice's precinct, one of which must be at the court house door. (emphasis added)

Tex.Rev.Civ.Stat.Ann. art. 7206, § 5 (Vernon 1960).

Appellants contend that once the Tax Assessor-Collector values the property and certifies the tax rolls to the Board of Equalization, the assessment process is complete; that since the Tax Assessor-Collector did not adopt an assessment ratio but used 100% valuations, the assessed value was at 100%; and that therefore, the 26% assessment ratio set by the County Commissioners at a later date did not constitute an increase in assessment or assessed value. In essence, appellants argue that since the 100% valuation was shown in the notice mailed in March, 1979, that an *assessment* ratio of anything less than 100% would not constitute a raise in assessments, and that the taxing agency could validly increase the assessment ratio to 26% or any higher figure up to 100%, without further notice to the taxpayers involved. We disagree.

■ The word "assessment" as used in the constitutional provision relating to the lien of assessments on landed property means the sum that has been ascertained as the apportioned part of the tax to be charged against the particular piece of property. The word includes the procedure on the part of officials by which the property is listed, valued, and finally the pro rata tax declared. 64 Tex.Jur.2d 74, Words and Phrases (1965). Our supreme court in *State v. Farmer*, 94 Tex. 232, 59 S.W. 541 (1900), stated:

The word "assessment," as here used, evidently means the sum which has been ascertained as the apportioned part of the tax to be charged against the particular piece of property; but under our constitution, and the provisions of our statute, the word embraces more than simply the amount, and includes the procedure on the part of the officials by which the property is listed, valued, and finally pro rata declared.

■ It is apparent that the term "assessment" embraces more than valuation of the property, but also includes the fixing of the tax liability.

■ The Commissioners' Court acting in its governmental capacity and not as a board of equalization does not have the authority or jurisdiction to set or increase assessment ratios. The only body with constitutional and statutory authority to do this and to set equal and uniform assessments as to the State and County is the Board of Equalization. *Crystal City Independent School District v. Johnson*, 535 S.W.2d 730 (Tex.Civ.App.—Tyler 1976, no writ); *City of El Paso v. Howze*, 248 S.W. 99 (Tex.Civ.App.—El Paso 1923, no writ); Tex.Const. Art. VIII, § 18; Tex.Rev.Civ. Stat.Ann. art. 7212 (Vernon Supp. 1980–1981); Tex.Rev.Civ.Stat.Ann. art. 7206 (Vernon 1960).

■ It is also a general rule that a Board of Equalization cannot raise the assessment ratio without notice to the taxpayer. *Zava-*

la County v. E. D. K. Ranches, Inc., 544 S.W.2d 484 (Tex.Civ.App.—San Antonio 1976, no writ); *Crystal City Independent School District v. Johnson, supra; City of El Paso v. Howze, supra.*

Appellants seek to distinguish these cases by contending that the Tax Assessor-Collector, in listing the 100% market value of the taxpayers' property, changed the assessment ratio from 20% to 100%, and when the Commissioners' Court later applied an assessment ratio of 26%, in effect there was no raise of assessments ratio without notice to the taxpayer. We disagree. We fail to see the practical distinction which appellants urge exists. The net result of the action taken by the Commissioners is that the values placed upon appellees' property for the purpose of taxation was increased when the assessment ratio was increased. There is ample evidence in the record to support the conclusion that the assessment ratio was 20%, and that this ratio would have been used, except for the action of the Commissioners' Court on September 4, 1979. This action was taken without required notice to the individual taxpayers involved. By reason of the violations hereinabove discussed, appellees are faced with tax bills approximately 25% to 30% greater than would be due with the assessment ratio of 20%. This action in raising the assessment ratio is void for want of jurisdiction.

Appellants also contend that appellees are not entitled to injunctive relief because they have failed to show substantial injury. It is well settled, however, that where the action taken by the taxing authority is void for want of jurisdiction, there is no necessity to show substantial injury. *Zavala County v. E. D. K. Ranches, Inc., supra; Crystal City Independent School District v. Johnson, supra; Fayetteville Independent School District v. Crowley,* 528 S.W.2d 344 (Tex.Civ.App.—Austin 1975, writ ref'd n.r.e.); *City of El Paso v. Howze, supra.*

We hold that (1) the trial court correctly found that the Commissioners' Court acting in its governmental capacity was without jurisdiction to increase the assessed valuation of appellees' properties; (2) the trial court correctly found that the plan of taxation adopted by Bexar County was illegal and void; (3) the trial court correctly found that the Commissioners' Court of Bexar County, Texas, acted illegally in increasing the assessment ratio from 20% to 26% without individual notice; and (4) the trial court correctly granted the temporary injunction prohibiting implementation of the Bexar County Tax Plan as to appellees.

We find no abuse of discretion by the trial court and the trial court did not err in granting the temporary injunction here involved. The judgment of the trial court is affirmed.